24-2249 Eastern Arkansas, State of Tennessee et al. v. Equal Employment Opportunity Commission All right, very well, Ms. Hermann-Dorfer, we'll hear from you first. Thank you, Chief Judge Carlton. Good morning, and may it please the Court, Whitney Hermann-Dorfer from the Office of the Tennessee Attorney General on behalf of the states would like to reserve three minutes for rebuttal. You may, but the clock will keep running, so if you want to reserve it, you'll just have to cease. Like scores of directly regulated parties before them, the states have standing to challenge a new federal agency rule that directly regulates them. The rule's saddle states with new quote requirements they oppose, but must now follow as a matter of binding federal law. The government has not cited a single APA case denying standing to a party in the state's position. Breaking that new ground would defy decades of settled precedent, confirming that parties can- A single what? APA, did you say? The government has cited no APA case- This isn't an APA case, is it? Yes, it is, Your Honor. We challenged the rule under the Administrative Procedure Act and were denied the ability to proceed with our action for a lack of standing. The district court reached that decision sua sponte, and so now we are before this court asking for a reversal on standing and a remand so that way we may proceed with the merits of our APA challenge. So, I mean, are you looking for the PI on a preliminary injunction on appeal as well? You kind of are, or are you- I mean, you just asked for a remand. Do you want the preliminary injunction too, or is that just kind of a fallback? We're absolutely happy with a remand on standing, Your Honor. A wise judge said about two hours ago that if you don't need to write about something, you won't. And so a remand is- Wouldn't that be the normal course, so that the district court gets the merits in the first instance? Absolutely, Chief Judge Colleton, and we briefed the merits of the preliminary injunction to ensure that path was available if Your Honors chose to pursue it. We don't think there's anything improper about dispensing with a preliminary injunction, but certainly our principal argument here is we should at least be in court, and that is the ruling that we are seeking reversal on. Of course, two other district courts have now entered a preliminary injunction against this rule, so we feel good about our merits arguments, but principally we would agree that those could be appropriately pursued on remand. And we think the route to a reversal on standing here, Your Honors, is quite straightforward. There are numerous cases confirming that when an agency adopts a binding rule- and that's what makes this case different than School of the Ozarks or other cases involving non-binding agency guidance, for example- when the agency adopts a binding rule that regulates parties in the way that this rule does, parties have standing to challenge that rule, and the government's only cases they come forward with have nothing to do with directly regulated parties, and indeed most of the cases that you'll see in this area actually contrast the standing of third parties with that of directly regulated parties. And they say things like, of course, standing is either self-evident or almost invariable when a party is directly regulated. I could list off those cases, but I don't have enough time. Why don't you just articulate the injury? Sure. I think Iowa League put it very well, Your Honor. And the quote from that case is, in that case, the parties were, quote, currently operating in circumstances inconsistent with the EPA action they were challenging, and they must imminently rectify that. And there is a, quote, concrete interest. What case are we talking about? We're talking about Iowa League from this court, Your Honor, and this is at page 870 and 871 of that case. And there is a, quote, concrete interest in avoiding a regulatory obligation over and above those that can be statutorily imposed on a party. But what I was asking is, can you articulate the injury in this case, not in the Iowa League of Cities case? Absolutely, Your Honor. So we currently, as alleged throughout the complaint, these states do not currently provide abortion accommodations for state employees. And as a result of this new binding federal law, we will have to provide those accommodations or be subject to civil liability. And so, as alleged in our complaint... Is that a current injury if you haven't yet made an accommodation? Absolutely, absolutely, Chief Judge Colleton. The injury is that we are, well, two things. First of all, being subject to this new regulatory burden is a concrete injury, as Iowa League... We're talking about the Abbott Labs and its progeny, right? It's not as categorical as you're suggesting. So Abbott Labs certainly addresses the ripeness problem, Judge Lucan, I think principally. Well, that's what we're talking about. So the government has not renewed a ripeness argument. All it's arguing is that... No, I'm not saying it's got to be in ripeness terms. If you don't face something imminent, we're at the interlocutory stage, right? No, Your Honor. We were dismissed from the entire action. What have you done concretely that characterizes an injury? Sure, we allege that we are going to have to amend... Yeah, but then you bring an as-applied challenge. That's not correct in APA cases as a matter of course, Your Honor. Pre-enforcement APA challenges are the absolute norm in APA cases. Indeed, many statutes actually require or route parties to bring pre-enforcement actions. So some of the most notable Administrative Procedure Act cases from the Supreme Court recently involved parties who are bringing a facial challenge to an obligation under a federal rule that they oppose. And that's the type of challenge we're bringing here. Give me your best case. Okay, so West Virginia v. EPA held that the rule, quote, Basically Lujan. Lujan is an example as well, Your Honor. Wait a minute, it was like the first. It was a principle example where the court noted that regulated parties typically have standing to bring APA cases. I think it was five to four. I mean, it was not like just, oh, this is common law that we've all known since the Revolution. So I could go on, Your Honor, with the cases. There's Hippocratic Oath from this past term of the Supreme Court emphasized that regulated parties typically have standing. But this is why Judge Gollin says what's the imminent and serious and costly injury in this case? Oh, we're going to face enforcement in the future. Fine, you defend the enforcement. Again, Judge Logan, absolutely that would be a path available, but that is not the routine path in APA cases. And two points on this. First, with respect to our complaint, what we alleged. I hear that argument. I'm going beyond that argument. If that argument is wrong, what's the specific injury here? So in paragraph 102 of our complaint, we alleged the many operations we are going to have to amend and the policies we're going to have to amend and the training we're going to have to undergo to update our practices to reflect that there is a new federal law that binds us. And for the government to tell this Court that the abortion accommodation requirement is so important that it must take immediate effect but yet so meaningless that no party can challenge it is self-contradictory in the exact argument that a number of other cases have rejected. So you're saying even before you accommodate a particular employee, you have to change your guidance in your literature to declare that you will accommodate something that you don't want to accommodate. Is that right? Absolutely, Chief Judge Collinson, and that's what the rule directs parties to do. It contemplates that there will be, quote, one-time compliance costs associated with training. And that just makes sense. This is the first case in which I've heard the government assert that a regulated party is supposed to do nothing when they are laboring under a new federal requirement. And of course, at the Rule 12 phase, our complaint in paragraph 102 alleged the many things we are going to need to do, and that's substantiated by what the rule contemplates. It not only says parties are going to need to train and update policies, which we specifically attribute to the new abortion accommodation requirement in our complaint, it accounts for those and assigns them a dollar value. So for the government to say, in fact, parties are not going to react to having a new code of federal regulations that governs them and directly defines the decision to have an abortion as a requirement employers must accommodate is not a realistic reading of how parties comply with rules. And I think the Religious Sisters case, which we cite in our brief at page 41, Your Honors, is a good example of this discussion about a pre-enforcement standing. Our case is easier than that case because that was involving guidance or it wasn't a final agency rule. And the court there said, well, if the agency is not disavowing enforcement and if it has put a new requirement on a regulated party, that is sufficient for standing. And for the government to, I think its position boils down to that it received 100,000 comments on this abortion accommodation requirement. It insisted in this court they needed to take immediate effect when it was opposing even a day's long administrative stay, discuss those requirements at length, said there were important new gap-filling measures, and then to say that a party is not supposed to take stock of those new requirements entirely defeats itself, Your Honor. And so we would just ask for the court to hold, in line with Iowa League and other cases like it, that when the agency puts a binding requirement, a party need not wait for enforcement to proceed with a challenge to the rule. If this court were to hold that, it would upend truly hundreds and hundreds of APA cases that treat pre-enforcement challenge as the norm with respect to standing and create tension with statutes directing parties to file an argument. Why did the district court treat this as an APA case? I think the district court understood that we were bringing an APA challenge, Your Honor, but it was assessing the- I thought the reasoning was that it applies when there's a procedural action. So there is a distinction drawn in some of the cases between a procedural action and a substantive APA challenge, Judge Loken, and I think this is a distinction you discussed in your opinion for the court in the Missouri v. Biden case when you were talking about Iowa League, and there you noted there are some category of procedural challenges where there might even be a more relaxed standing analysis. But I think the district court understood- So why doesn't that apply here? Well, we think it does apply for the reasons in our brief, but we also think we don't need it. We have asserted a procedural foul in terms of the agency ignoring substantial comments, and we cite cases noting that that's more of a process foul. But our fundamental position is that the agency has no statutory authority to bind us with this new abortion accommodation requirement as the rule terms it at appendix page 70 and page 76. And so that doesn't turn on any sort of fact-specific inquiry that might, under Abbott Labs, counsel the court to wait for a future enforcement action. We're challenging the validity of that statutory requirement on its face, and as the two other courts have held with respect to this precise rule, we believe that we at least have adequately pleaded standing to do so and should be permitted to take our case forward. So one thing that occurred to me, if a procedural something is needed, why isn't that count four? I'm sorry, Your Honor. Why isn't count four a procedural challenge? We do think that count four- Was that argued in the district court? If you need a procedural challenge, what could be more procedural than count four? So we agree that count four, throughout, is embedded with process fouls that the agency took. What's that word you're using? Process what? Fouls? Fouls, yes. Like in basketball? A foul? A defective process, Your Honor. Okay. And as you noted, Judge Loken, with respect to count four, there was no analysis in the district courts- I wasn't asking the merits of count four, and I know that's a separate part of what you're complaining about. But it just, if we're talking about procedure versus substance, what could be more procedural than the merits of count four? Why didn't the district court observe, take that under consideration? If I could answer, Your Honors. You may. So I think what happened here and the way this litigation proceeded is a function of the fact that we had only briefed preliminary injunction with respect to a few claims. And I think that's the best way to understand some of the analytical errors the district court made, both with respect to that count and just the dismissal as opposed to denial of the preliminary injunction. All right. Very well. Thank you for your argument. I'm afraid your time has expired, but we appreciate your argument. Ms. Middle, we'll hear from you. Good morning, Your Honors. May it please the Court, we're Gemma Thill for the Equal Employment Opportunity Commission. I'd like to begin by taking a step back to clarify the rule implementing the Pregnant Workers' Fairness Act that's at issue here today and is relevant here. Under the Act, employers are to make reasonable accommodations for the known limitations related to pregnancy, childbirth, and related medical conditions. Plaintiffs do not challenge the statute. They challenge a portion of the regulation implementing the statute that lists potential applications of that statutory language, potential scenarios in which employees may go to their employers seeking accommodations. Plaintiffs have not shown any actual or imminent injury from that portion of the regulation. When an employee decides to request an accommodation. What does that have to do with standing? Well, because plaintiffs have not shown an actual or imminent injury, they haven't established their standing to press this challenge. And the reason they haven't shown an actual or imminent. I'm tired. The regulatory challenge. They've certainly shown an injury there if their concept is right. Well, they haven't shown an injury because they, for injury, they need to show that one of the injuries that they've outlined, either a credible risk of enforcement or some sort of costs are actual or imminent, and they have not shown that. No, they're saying we have to rewrite our policies and regs and literature. Well, that's not required under the regulation. They're, as the district court found. They're allowed to keep their noncompliant literature? And your enforcers won't do anything, and we won't care. Well, regulation does not provide for the EEOC to enforce, go out policing handbooks or enforce them. If they choose to update their guidance. But don't they have an obligation to follow the law? They have an obligation to follow the law, but that obligation kicks in when employees come to them with the kind of accommodation requests that would be required under the statute. And those requests have to be for reasonable accommodations. The employer and the employee can engage in an interactive back and forth to discuss. That has applied merits talk. That's not standing for facial challenge. Well, it's precisely because that kind of a challenge is one we usually think about as an as-applied challenge. What they are challenging is the application of that language in the statute. We're talking West Virginia EPA and Iowa cities. Well, in those cases, right, in those cases, the courts recognize that it is typically or often the case where a directly regulated party is standing. But this isn't a case like that. Those cases are different, and this is why. Why are they different? Those cases are different because they involve regulated parties whose immediate behavior has to change. So let's take Iowa cities for an example. The district court didn't consider it. The district court did consider the object argument, and the district court explained after going through its analysis about why there is no actual or imminent injury that the object On page 15, the district court said on the regulatory challenge, it's got to be procedural, period. I don't have to worry about Lujan and its progeny. The district court explained, and this was the argument presented to the district court that the district court was resolving, that the object of a regulated action may have injury, sorry, may have standing, but still needs to show actual or imminent injury, and that that requirement isn't bypassed simply by claiming that you're a regulated party. Where's the analysis of the impact on policies and literature and what they do? There's an analysis, and I can pull up the page in a second, Your Honor, where the district court says those costs, which the plaintiffs deemed compliance costs, weren't sufficient for Article III standing because they were premised on their speculative predictions about the risk of enforcement, and those predictions What's our review of that? It's de novo, right? That's right, Your Honor. But those speculative risks of enforcement are premised on their speculation that there will be an accommodation request presented to these plaintiff state employers in the specific circumstances. But let's say what we need is saying right now to all of its employees, we will not accommodate elective abortions. That's our policy. And now there's a federal law that says they must do so. Shouldn't the state change what it's telling its employees in order to follow the federal law if the federal law is valid? If the state may need to change what it's telling its employees in response to accommodation requests, if the state had any No, not in response to a request. In response to the final reg. And if the states choose to make those changes, those changes still don't come under the umbrella of Article III injury because those changes are changes that they're undertaking to come into compliance with the federal law. But the federal law is not saying go change your handbooks, go rewrite your policy manuals. Those are changes that the states may be undertaking. But there's no What do you mean? You're saying it's voluntary by them to conform to the federal law? And to the extent it is voluntary and it's right for them to do so, but that doesn't give rise to any support standing to bring the challenge they've brought. They've challenged an application of the statute. They haven't associated any compliance costs with the specific scenario in which they're challenging the statute and the regulation. They're not challenging What if they challenge the whole rule? If they challenge the whole rule Would they have standing then? Your Honor, the analysis would be different because the costs that they've shown are the costs of carrying out their obligations under the statute as a whole. They're not the But they don't challenge the statute as a whole. They don't challenge Why should they have standing to challenge the rule as a whole, not to challenge part of it? If they had shown the costs associated with carrying out the rule as a whole, then they would have a closer case for standing and injury associated with that challenge. They haven't shown any additional injury or sort of attributable to the part of the accommodation provision that they're challenging, and that matters. A sort of simpler way of thinking about this is as follows. If you think about the Americans with Disabilities Act context or another sort of accommodation statute under federal law, no employer, whether public or private, typically lists out all the scenarios in which they have to provide accommodations or all the scenarios in which those accommodations would be reasonable or all the scenarios in which they may be able to assert or not assert undue hardship. Those are fact-specific situations. Employer handbooks, employer policies in the ordinary course talk about those obligations at a higher level of generality. And so to claim any cost associated with the practice or policy of how an employer would respond to a specific accommodation request is really difficult here for the states to do when they haven't done it. And they said in district court, it's in the transcript, it's quoted below, that they don't know if there is any cost associated with carrying out, if we do think about compliance costs, the specific accommodation request challenged here. They're only challenging.  But it's their employees, right, that are the subject of this? They're employees who. They're public sector employees. It's the employees who would have the right to make those accommodation requests. And the rule says they must be accommodated. No. The rule says, Your Honor, or the statute says, and the rule repeats. The rule. I don't care about that. Well, the rule in this case is repeating the statute, and it says that the employers are to make the accommodation request if, one, they're reasonable, and, two, they do not pose an undue hardship to the employer's operations. Those are sort of facts. Are you saying, though, that if they had challenged the whole rule, then they would have standing to litigate all of the aspects of the rule, including this one right now? Your Honor, it would depend on the showing that they would have made to challenge the whole rule. The regulation says there's this much compliance cost, right? That's in the rule itself. The regulation, Your Honor, describes costs in a sort of broad sense. It doesn't say that if they challenge the whole rule, then they would have standing based on that bucket of compliance costs. They would have to show particularized compliance costs to themselves. The compliance costs set forth in the regulation are described on a nationwide basis. Those are, again, they're not describing anything that's prescribed by the rule. Nowhere in any of the regulations implementing the PWFA is there any requirement about what compliance obligations employers need to undertake. That section of the regulation is issued in due course as a way for the executive agency and the commission to be in compliance with Executive Order 12866. It is not prescriptive about what costs or what obligations employers have to undertake. But if a challenge were brought to the rule as a whole, which I take Your Honor's question to be about, obviously what standing they'd have to show, what injury they'd have to show, and therefore what standing they would have to show, would be different. That's not – it is actually dispositive in this case that they had not brought that broader challenge. They brought a – they agreed that the rest of the – I'm trying to understand, though, why they would have standing if they challenged the whole rule and then they lost on everything but this part and they won on this part. You would say they had standing to do it. But if they just winnow out the parts that they think they would lose on, they lose standing. Why would that make sense? That's if you agree, Your Honor, that the showing of these kinds of costs is sufficient injury. The government has explained – That's what I was asking. If they challenged the whole rule, would they have standing? Are you saying no? The government's position is that until there is a showing that any sort of accommodation request is actual or imminent, they have not yet shown that those costs are associated with anything but a speculative risk or a speculative injury in the future.  They've made their showing and you say it's too general. So we were a man with instructions to challenge the whole rule and now we'll take the cost of compliance as previously alleged. No, Your Honor. The plaintiffs' states have agreed that they're not challenging the statute as a challenge to regulation. They're not even challenging the abortion agreement. But we can come in with instructions to give them leave to amend and seek standing on it with the same showing of injury. Your Honor, again, the government's position is that those costs are not attributable to any actual or imminent accommodation requests. As Your Honor pointed out earlier, you can view this through the lens of ripeness. When those accommodation requests come, there would be occasion to bring a challenge properly at that time. Let me just read you a sentence from Iowa League. The League's members have a concrete interest not only in being able to meet their regulatory responsibilities, but in avoiding regulatory obligations above and beyond those that can be statutorily imposed upon them. That's right, Your Honor. That's the law of the Eighth Circuit. That's right. It applies here. No, Your Honor, because that discussion follows a discussion earlier in the opinion where this Court explained that the regulated entities, in that case they were municipal water systems that were members of an association, had shown a concrete and actual imminent injury of the kind I'm describing here. What they had shown was that they were municipal water systems. They had to implement various sort of filtration systems pursuant to this EPA action, they argued, and they would immediately have to change their behavior in accordance with those agency actions. And so there was a concrete and imminent interest. There's water flowing through the water filtration system. There's an ongoing activity that has to be changed. Your Honor talked about Abbott Labs earlier. Abbott Labs' companion case, Toilet Goods, has some sort of relevant language here where they talk, the Court talks about, the Supreme Court talks about needing to change day-to-day activities. And the government's explained that here the injuries that the States have identified are injuries that accrue when that accommodation request is made. And these costs of updating handbooks and so on are costs that are made predicated on the expectation of that accommodation request coming. But as Judge Marshall described in his opinion below, that kind of a cost under Clapper in all of the subsequent cases doesn't, isn't enough for purposes of Article III injury. That doesn't mean that there couldn't be another case in which those kinds of costs would suffice, but this isn't one. This is different from other APA cases like those environmental actions described in Iowa League or in other cases where and other cases where. I don't see why. Because those. I don't know if you can say it, but it's an Ipsy Dixit as far as I'm concerned. Those cases, Your Honor, involve sort of ongoing activities. If you think about a manufacturer that's emitting gases into the air, the water system, there's a change to their daily operations that's immediately required. There's no change here in the State's behavior.  These are ongoing relationships between the States and their employees. Right, Your Honor. Those ongoing relationships. And you're being told that now Federal law is different than State law and you may not obey State law anymore. Well, State law in this case doesn't govern workplace accommodations. And the district court went through all of the cited statutes by these States and found that not a single one governs workplace accommodations in the way that this statute governs the provision of workplace accommodations.  That's right, Your Honor. That's the merits. We're not doing the merits. This is not merits. I agree, Your Honor. But for purposes of injury, there's no change in behavior that's warranted because of a conflicting State law. And that's, that's, that was the analysis of the district court in this case that's relevant here. But I agree that the merits aren't before this Court. If this Court has no further questions, we'd ask that this Court affirm the district court's decision. Very well. Thank you for your argument. Thank you. Why don't you leave that one minute on the clock and we'll hear a brief rebuttal. But please stick within the time.  In terms of the government's argument about future accommodations arising, the whole rule is premised on the notion that providing accommodations are important. And even if we thought future enforcement or accommodation requests mattered, all that's required under the Department of Commerce case by the Supreme Court is that something occurs because it's the predictable effect of government action. Here, the government adopted the accommodations requirement for the purpose of allowing employees to make accommodations. And this notion that compliance is just going to materialize out of thin air and that States aren't going to change any policies until someone shows up asking for an accommodation defies the fundamental presumption that parties follow the law. And it is, frankly, unfair to the States to tell it it has a new Federal obligation yet say, well, maybe after all, the final rule might be pointless and might never apply. A regulated party has no recourse in that position. The government's argument has been rejected before in cases we've cited. We ask this Court to reject it again. Thank you, Your Honors. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted and the Court will file a decision in due course.